IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LARRY FELDER, §
§
            Plaintiff, §
§
v. §
§
COUNTRYWIDE HOME LOANS, §
BANK OF AMERICA LOAN §        CIVIL ACTION NO. H-13-0282
SERVICING, LP, AMERICA §
WHOLESALE LENDER, BAC HOME §
SERVICING LP, THE BANK OF NEW §
YORK MELLON, and WEST & §
ASSOCIATES LLP, AS SUBSTITUTE §
TRUSTEE, §
§
            Defendants. §

## MEMORANDUM OPINION AND ORDER

Plaintiff Larry Felder brought this action against defendants
Countrywide Home Loans Inc. d/b/a America's Wholesale Lender
("Countrywide"); Bank of America, N.A., successor by merger to BAC
Home Loans Servicing LP ("Bank of America"); The Bank of New York
Mellon, as Trustee for the Certificateholders, CWABS, Inc., Asset
Backed Certificates, Series 2007-2 ("BONY Mellon") (collectively,
"Lender Defendants"); and West & Associates, LLP ("West") in the
151st Judicial District Court of Harris County, Texas, where it was
filed under Cause No. 2011-38427.  BONY Mellon removed the action
to this court.[1]  Pending before the court are Plaintiff's Motion to

---

[1]Defendants Countrywide, Bank of America, and West consented
to the removal.  Consent to Removal, Exhibit C to Notice of
Removal, Docket Entry No. 1-5.

Remand Cause of Action Under 28 U.S.C. § 1447(c) ("Motion to Remand") (Docket Entry No. 14), Lender Defendants' Motion for Summary Judgment (Docket Entry No. 23), and Plaintiff's Motion for Leave to File First Amended Complaint ("Motion to Amend") (Docket Entry No. 27). For the reasons explained below, Felder's Motion to Remand will be denied, Felder's Motion to Amend will be granted, and Lender Defendants' Motion for Summary Judgment will be granted.

## I.   <u>Background</u>

### A.   **Factual Allegations**

In January of 2007 Felder financed the purchase of a home with a mortgage loan.[2]  Felder executed a $225,600 Adjustable Rate Note in favor of America's Wholesale Lender[3] and secured the Note with a Deed of Trust on the property.[4]  The Deed of Trust identified the Lender as America's Wholesale Lender and stated that Mortgage Electronic Registration Systems ("MERS") was "acting solely as a nominee for Lender and Lender's successors and assigns" and was "a

---

[2]Plaintiff's Amended Original Petition, Application for Temporary Restraining Order and Request for Temporary Injunction ("Amended Original Petition"), Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 35 ¶ 15; Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23, p. 9 ¶ 3; Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, p. 5 ¶ 15.   (Page citations are to the pagination imprinted at the top of the page by the federal court's electronic filing system.)

[3]Adjustable Rate Note, Exhibit B to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-10.

[4]Deed of Trust, Exhibit L to Plaintiff's First Amended Complaint, Docket Entry No. 27-20.

beneficiary under this Security Instrument."[5]   Felder's mortgage was assigned to BONY Mellon in August of 2010.[6]

Between 2007 and 2010 Felder received numerous notices that he was in default[7] and was offered at least three loan modifications.[8] Felder's payment history and the effect of each proposed loan modification are discussed in further detail in § IV.B.1 below.

West was appointed as Substitute Trustee in July of 2010.[9] West sent Felder a Notice of Acceleration and Sale on May 16, 2011.[10]   BONY Mellon purchased the property at the substitute trustee's sale on June 7, 2011, for $229,500.[11]

---

[5]Id. at 2.

[6]Assignment of Mortgage, Exhibit A-5 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-6.

[7]Notices of Default, Exhibit A-6 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-7.

[8]October 23, 2008, Correspondence from Countrywide to Felder Re: Loan Modification ("October 2008 Loan Modification Correspondence"), Exhibit C to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-11; April 3, 2009, Correspondence from Countrywide to Felder Re: Proposed Loan Modification ("April 2009 Loan Modification Correspondence"), Exhibit D to Amended Original Petition (Exhibit A to Notice of Removal), Docket Entry No. 1-2, pp. 7-10; November 16, 2009, Correspondence from Bank of America to Felder Re: Loan Modification ("November 2009 Loan Modification Correspondence"), Exhibit A-5 to Plaintiff's First Amended Complaint, Docket Entry No. 27-8.

[9]Appointment of Substitute Trustee, Exhibit A-12 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-13.

[10]Notice of Acceleration and Sale, Exhibit I to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-17; Notice of Acceleration and Sale, Exhibit A-13 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-14.

[11]Substitute Trustee's Deed, Exhibit K to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry (continued...)

**B.    Procedural History**

Felder filed his First Original Petition in the 151st Judicial District Court of Harris County, Texas, on June 28, 2011, naming Countrywide, Bank of America, and West as defendants.[12]  The state court dismissed Felder's suit for want of prosecution on May 16, 2012.[13]  Felder filed a Motion to Reinstate Case on Docket on June 10, 2012.[14]  The state court granted the motion on July 31, 2012.[15]

On August 24, 2012, Felder filed his Amended Petition.[16]  On November 28, 2012, Countrywide and Bank of America filed a special

_____

[11](...continued)
No. 27-19; Substitute Trustee's Deed, Exhibit A-14 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-15.

[12]Plaintiff's First Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-3, p. 94; Plaintiff's First Original Petition, Exhibit A to Lender Defendants' Opposition to Plaintiff's Motion to Remand, Docket Entry No. 26-1.

[13]Final Order of Dismissal, Exhibit A to Notice of Removal, Docket Entry No. 1-3, p. 60; Final Order of Dismissal, Exhibit B to Lender Defendants' Opposition to Plaintiff's Motion to Remand, Docket Entry No. 26-2.

[14]Motion to Reinstate Case on Docket, Exhibit A to Notice of Removal, Docket Entry No. 1-3, p. 48.

[15]Order, Exhibit A to Notice of Removal, Docket Entry No. 1-3, p. 46.

[16]Plaintiff's Amended Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-3, p. 39.

exception[17] and their Original Answer.[18]  The state court sustained

the Special Exception on December 17, 2012.[19]

On January 7, 2013, Felder filed his Amended Original

Petition.[20]  In addition to the defendants named in his prior

petitions, Felder named BONY Mellon as a defendant.[21]  On

January 11, 2013, the state court issued a temporary restraining

order against all defendants restraining them from "selling real

property which is the subject matter of this lawsuit . . . as well

as from taking any legal action to evict the Plaintiff and any

other occupants from the aforementioned property or enforce a writ

of possession regarding the aforementioned property."[22]  The Lender

Defendants were served with Felder's Amended Original Petition on

---

[17]Defendant's Special Exception to Plaintiff's Second Amended
Petition ("Special Exception"), Exhibit A to Notice of Removal,
Docket Entry No. 1-3, p. 15; Special Exception, Exhibit D to Lender
Defendants' Opposition to Plaintiff's Motion to Remand, Docket
Entry No. 26-4.

[18]Original Answer of Defendants Countrywide Home Loans and BAC
Home Servicing LP, Exhibit A to Notice of Removal, Docket Entry
No. 1-3, p. 13.

[19]Order Sustaining Defendants' Special Exceptions, Exhibit A
to Notice of Removal, Docket Entry No. 1-3, p. 11; Order Sustaining
Defendants' Special Exceptions, Exhibit E to Lender Defendants'
Opposition to Plaintiff's Motion to Remand, Docket Entry No. 26-5.

[20]Amended Original Petition, Exhibit A to Notice of Removal,
Docket Entry No. 1-1, p. 35.

[21]Id.

[22]Temporary Restraining Order and Order Setting Hearing for
Temporary Injunction, Exhibit A to Notice of Removal, Docket Entry
No. 1-1, p. 16.

January 22, 2013.[23]  On January 31, 2013, West filed its Answer and
Verified Denial.[24]

BONY Mellon filed its Notice of Removal on February 5, 2013.[25]
On February 27, 2013, Felder filed a response to West's Verified
Denial.[26]  On March 7, 2013, Felder filed his Motion to Remand.[27]

A settlement conference was held before the magistrate judge
on June 24, 2013.[28]  On August 22, 2013, the Lender Defendants filed
their Motion for Summary Judgment.[29]  Felder filed his Response on
October 23, 2013.[30]  The Lender Defendants filed their Reply on
October 29, 2013.[31]

_____

[23]Services, Exhibit A to Notice of Removal, Docket Entry
No. 1-1, p. 4.

[24]Defendant West & Associates, LLP's Answer and Verified Denial
("Verified Denial"), Supplemental to Document 1, Exhibit A Part 3,
Docket Entry No. 2.

[25]Notice of Removal, Docket Entry No. 1.

[26]Plaintiff's First Supplemental Petition Responding to
Original Answers and Verified Denials Pursuant to Texas Property
Code § 51.007 of Defendant West & Associates, LLP ("First
Supplemental Petition"), Docket Entry Nos. 9-10.

[27]Motion to Remand, Docket Entry No. 14.

[28]Minute Entry for Proceedings Held Before Magistrate Judge
Nancy K. Johnson, Docket Entry No. 22.

[29]Lender Defendants' Motion for Summary Judgment, Docket Entry
No. 23.

[30]Plaintiff's Memorandum in Response to Lender Defendant's
Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(A)
("Felder's Response"), Docket Entry No. 24.

[31]Bank of America's Reply, Docket Entry No. 25.

On November 11, 2013, the Lender Defendants filed their Opposition to Plaintiff's Motion to Remand.[32]  On December 3, 2013, Felder filed his Motion to Amend.[33]  The Lender Defendants filed their Opposition to Plaintiff's Motion to Amend on December 4, 2013.[34]

## II.  **Felder's Motion to Remand**

In his Motion to Remand, Felder argues that remand is appropriate in this case for three reasons:  (1) BONY Mellon's Notice of Removal was not timely filed; (2) complete diversity is lacking; and (3) the amount in controversy is less than $75,000.[35] For the reasons explained below, Felder's Motion to Remand will be denied.

## A.  **BONY Mellon's Notice of Removal Was Timely Filed**

Felder argues that removal was improper because BONY Mellon filed its Notice of Removal more than thirty days after Bank of America and Countrywide were served with process in the state court proceedings.[36]  Felder cites <u>Brown v. Demco, Inc.</u>, 792 F.2d 478,

---

[32]Lender Defendants' Opposition to Plaintiff's Motion to Remand, Docket Entry No. 26.

[33]Motion to Amend, Docket Entry No. 27.

[34]Lender Defendants' Opposition to Plaintiff's Motion to Amend, Docket Entry No. 28.

[35]Motion to Remand, Docket Entry No. 14, p. 3 ¶ 8, pp. 6-7 ¶¶ 17-19.

[36]<u>Id.</u> at 7 ¶¶ 20-21.

481-82 (5th Cir. 1986), for the proposition that "the failure of the first-served defendant to file a notice of removal within 30 days of service prevents all later-served defendants from removing the action."[37] However, as noted by the Lender Defendants, Congress adopted the last-served-defendant rule for all actions commenced on or after January 6, 2012.[38] Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63 §§ 103, 205, 125 Stat. 758, 760, 764-65 (amending 28 U.S.C. § 1446); Benavides v. Sun Loan P'ship No. 3, Ltd., No. 2:13-CV-00084, 2013 WL 2458625, at *2-*4 (S.D. Tex. June 6, 2013).

Under Texas law the addition of a new party commences a new action against that party. See Benavides, 2013 WL 2458625, at *4 ("[S]uit is 'commenced' at the time the original pleading is first filed in a court of competent jurisdiction unless there are special circumstances that prevent the relation-back, such as the addition of a new party. Under those circumstances, the new pleading commences a new action as to that new defendant."). The amended version of § 1446 provides that "[e]ach defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal." 28 U.S.C. § 1446(b)(2)(B). Furthermore, "[i]f defendants are served

---

[37]Id. at 7 ¶ 21.

[38]Lender Defendants' Opposition to Plaintiff's Motion to Remand, Docket Entry No. 26, p. 6 ¶ 22.

at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." Id. § 1446(b)(2)(C).

Felder first named BONY Mellon as a defendant in his Amended Original Petition filed on January 7, 2013.[39]  BONY Mellon received service of process on January 22, 2013.[40]  BONY Mellon filed its Notice of Removal on February 5, 2013,[41] within thirty days of service, and all earlier-served defendants consented to removal.[42] Accordingly, BONY Mellon's Notice of Removal was timely filed.

## B.   West was Improperly Joined

BONY Mellon argues that complete diversity exists because West was improperly joined.[43]  On January 31, 2013, West filed a Verified Denial pursuant to Texas Property Code § 51.007(a).[44]    On February 27, 2013, Felder filed his First Supplemental Petition

---

[39]Amended Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 35.

[40]Services, Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 4.

[41]Notice of Removal, Docket Entry No. 1.

[42]Consent to Removal, Exhibit C to Notice of Removal, Docket Entry No. 1-5.

[43]Notice of Removal, Docket Entry No. 1, pp. 3-4 ¶¶ 5-10.

[44]Verified Denial, Supplemental to Document 1, Exhibit A Part 3, Docket Entry No. 2.

responding to West's Verified Denial.[45]   <u>See</u> Tex. Prop. Code
§ 51.007(b).   Under the Texas Property Code, "[i]f a respondent
files a timely verified response to the trustee's verified denial,
the matter shall be set for hearing" and "[t]he court shall dismiss
the trustee from the suit or proceeding without prejudice if the
court determines that the trustee is not a necessary party."   <u>Id.</u>
§ 51.007(d).   Because BONY Mellon does not rely on § 51.007 for its
claim of improper joinder, however, a hearing is unnecessary.   <u>See</u>
<u>Hearn v. Deutsche Bank Nat. Trust Co.</u>, 3:13-CV-2417-B, 2013 WL
6079460, at *3 (N.D. Tex. Nov. 18, 2013) ("The Court need not
decide this verified denial issue in order to rule on Defendants'
claims of improper joinder, however, because even if Trustee
Defendants are not dismissed under § 51.007(c), there is no
reasonable basis for predicting that Hearn will be able to recover
against Trustee Defendants." (citing <u>Smallwood v. Ill. Cent. R.R.</u>
<u>Co.</u>, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)).   For the reasons
explained below, Felder has failed to allege a plausible cause of
action against West and West, is therefore improperly joined.

    1.   <u>Applicable Law</u>

    "Under 28 U.S.C. § 1441(a) any state court civil action over
which the federal courts would have original jurisdiction may be
removed from state to federal court." <u>Gasch v. Hartford Accident &</u>
<u>Indem. Co.</u>, 491 F.3d 278, 281 (5th Cir. 2007).   Federal courts have

---

[45]First Supplemental Petition, Docket Entry Nos. 9-10.

original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Diversity jurisdiction requires complete diversity -- that is, the citizenship of each plaintiff must be diverse from the citizenship of each defendant. Caterpillar Inc. v. Lewis, 117 S. Ct. 467, 472 (1996).

Removal jurisdiction depends on the plaintiff's state court pleadings at the time of removal. Pullman Co. v. Jenkins, 59 S. Ct. 347, 349 (1939); Cavallini v. State Farm Mutual Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995). The doctrine of improper joinder ensures that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity. Borden v. Allstate, 589 F.3d 168, 171 (5th Cir. 2009). The court may ignore an improperly joined, non-diverse defendant in determining subject matter jurisdiction. Smallwood, 385 F.3d at 572.

A removing party attempting to prove improper joinder carries a heavy burden. Great Plains Trust Co. v. Morgan Stanley Dean Witter, 313 F.3d 305, 312 (5th Cir. 2002). To establish that a non-diverse defendant has been improperly joined in order to defeat diversity jurisdiction the removing party must prove either "'(1) actual fraud in the pleading of jurisdictional facts or (2) an inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Smallwood, 385

F.3d at 573 (quoting Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003)). Only the second method is at issue in this case.

Under this second type of improper joinder the court must determine "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state [or non-diverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state [or non-diverse] defendant." Smallwood, 385 F.3d at 573. A "reasonable basis" requires more than a theoretical possibility of recovery. Ross v. Citifinancial, Inc., 344 F.3d 458, 462 (5th Cir. 2003).

Whether the plaintiff has alleged a valid cause of action "depends upon and is tied to the factual fit between the plaintiff['s] allegations and the pleaded theory of recovery." Griggs v. State Farm Lloyds, 181 F.3d 694, 701 (5th Cir. 1999). Accordingly, a defendant can establish diversity -- and thereby defeat remand -- by showing that the plaintiff's state court petition fails to allege "specific actionable conduct" sufficient to support a cause of action against a non-diverse defendant. Id. A mere formulaic recitation of the elements of a cause of action asserted against a non-diverse defendant is not sufficient under this standard. Moore v. State Farm Mut. Auto. Ins. Co., No. H-12-1539, 2012 WL 3929930, at *4 (S.D. Tex. Sept. 6, 2012).

In deciding whether a party was improperly joined all unchallenged factual allegations are taken into account in the

light most favorable to the plaintiff, Smallwood, 385 F.3d at 575;
and all contested factual issues and ambiguities of state law are
resolved in favor of the plaintiff.  Gasch, 491 F.3d at 281.  The
existence of a single valid cause of action against a non-diverse
defendant requires remand of the entire case to state court.  Gray
v. Beverly Enterprises-Mississippi, Inc., 390 F.3d 400, 412 (5th
Cir. 2004).

2.  Analysis

The Lender Defendants argue that Felder cannot recover against
West because Felder sued West "solely in [its] capacity as
substitute trustee under the deed of trust, and therefore, [West]
is not a necessary party."[46]  Felder's Amended Original Petition
alleges at least six substantive causes of action and seeks
declaratory and injunctive relief.[47]  However, the only factual
allegations made against West have to do with its alleged failure
to provide proper notice prior to the substitute trustee's sale as
required by the Deed of Trust and the Texas Property Code.[48]

A trustee's breach of its duties under the Deed of Trust and
the Texas Property Code, while not an independent tort under Texas

---

[46]Notice of Removal, Docket Entry No. 1, p. 4 ¶ 9; see also
Lender Defendants' Opposition to Plaintiff's Motion to Remand,
Docket Entry No. 26, pp. 12-15 ¶¶ 39-46.

[47]Amended Original Petition, Exhibit A to Notice of Removal,
Docket Entry No. 1-1, p. 35; see also Motion to Remand, Docket
Entry No. 14, p. 2 ¶ 3.

[48]Amended Original Petition, Exhibit A to Notice of Removal,
Docket Entry No. 1-1, pp. 40-41 ¶¶ 26, 31.

-13-

law, may be stated as a claim for wrongful foreclosure. <u>Marsh v.</u>
<u>Wells Fargo Bank, N.A.</u>, 760 F. Supp. 2d 701, 708 (N.D. Tex. 2011).
However, "trustees are not liable 'for any good faith error
resulting from reliance on any information in law or fact provided
by the mortgagor or mortgagee or their respective attorney, agent,
or representative or other third party.'" <u>Wegener v. Wells Fargo</u>
<u>Bank, NA</u>, No. 4:11-CV-832, 2012 WL 844520, at *3 (E.D. Tex.
Feb. 17, 2012) (quoting Tex. Prop. Code § 51.007(f)).    In
addressing the good faith element of § 51.007(f), courts have
generally held that § 51.007(f) imposes a substantive pleading
requirement on a plaintiff seeking to recover against a substitute
trustee. <u>See, e.g.</u>, <u>Leal v. Bank of New York Mellon</u>, No. C-12-265,
2012 WL 5465978, at *5 (S.D. Tex. Oct. 22, 2012) ("Unlike the
provisions of § 51.007(a)-(e), which provide a procedural mechanism
for   dismissing   claims   against   trustees   where   appropriate,
§ 51.007(f) imposes a substantive pleading requirement.  Therefore,
in order to satisfy § 51.007(f), a plaintiff must allege bad faith
on the part of a substitute trustee named in the action." (internal
citations omitted)).  Even a generous reading of Felder's Amended
Original Petition does not reveal any factual allegations that
would suggest bad faith on the part of West. <u>See</u> <u>id.</u>

    Felder supplements his claims against West in his First
Supplemental Petition.[49]   However, because "federal courts base
decisions about subject matter jurisdiction after removal on the

_____

[49]First Supplemental Petition, Docket Entry Nos. 9-10.

plaintiff's complaint as it existed at the time that the defendant filed the removal petition," only Felder's Amended Original Petition is relevant to a determination of the propriety of removal. <u>Kidd v. Southwest Airlines, Co.</u>, 891 F.2d 540, 546 (5th Cir. 1990); <u>see also</u> <u>Cavallini</u>, 44 F.3d at 264 ("[A] complaint amended post-removal cannot divest a federal court of jurisdiction" (citing <u>Pullman</u>, 59 S. Ct. at 348-49)). Nonetheless, the court has considered Felder's First Supplemental Petition insofar as it clarifies the basis on which Felder seeks to hold West liable in his Amended Original Petition.

Felder argues that West had a duty to "act with absolute impartiality and . . . fairness to all concerned," but he pleads no facts that would give rise to an inference of bad faith.[50]   In addition to his allegations that West failed to provide proper notice in accordance with the Deed of Trust and the Texas Property Code, Felder argues that West is an "indispensable" party because the state court enjoined it "in the midst of an impending foreclosure" and that a finding of improper joinder would allow West to "post again for a subsequent sale or forcible detainer."[51] However, Felder offers no authority, and the court is aware of none, suggesting that West could take any adverse action against Felder on behalf of the Lender Defendants that the Lender Defendants were enjoined from taking themselves. <u>See</u> <u>Marsh</u>, 760

---

[50]<u>Id.</u> at 7 ¶ 20.

[51]<u>Id.</u> ¶ 19.

F. Supp. 2d at 709.  Accordingly, the court concludes that Felder has failed to state a plausible cause of action against West and that West was therefore improperly joined.

## C.   The Amount in Controversy Exceeds $75,000

Felder argues that the amount in controversy does not exceed $75,000 because he has negative equity in the property and is seeking solely to enforce his right of possession.[52]  The Lender Defendants argue that the amount in controversy should be measured by the value of the property.[53]

### 1.   Applicable Law

Removal jurisdiction depends on the plaintiff's state court pleadings at the time of removal.  Pullman Co., 59 S. Ct. at 349; Cavallini, 44 F.3d at 264.  "When the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [the jurisdictional amount]."  De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993).  The removing defendant may meet its burden in two ways.  Garcia v. Koch Oil Co. of Texas Inc., 351 F.3d 636, 639 (5th Cir. 2003).  "First, jurisdiction will be proper if 'it is facially apparent' from the plaintiffs' complaint that their 'claims are likely above [$75,000].'"  Id.

---

[52]Motion to Remand, Docket Entry No. 14, pp. 12-14 ¶¶ 37-39.

[53]Lender Defendants' Opposition to Plaintiff's Motion to Remand, Docket Entry No. 26, pp. 11-12 ¶¶ 36-38.

(quoting <u>Allen v. R & H Oil & Gas Co.</u>, 63 F.3d 1326, 1335 (5th Cir. 1995)).  However, "[i]f the value of the claims is not apparent, then the defendants 'may support federal jurisdiction by setting forth the <u>facts</u> -- [either] in the removal petition [or] by affidavit -- that support a finding of the requisite amount." <u>Id.</u> (quoting <u>Allen</u>, 63 F.3d at 1335).  Once "[t]he defendant has established, by a preponderance, that federal jurisdiction is warranted[,] . . . '[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" <u>De Aguilar v. Boeing Co.</u>, 47 F.3d 1404, 1412 (5th Cir. 1995) (quoting <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 58 S. Ct. 586, 590 (1938)).

2.   <u>Analysis</u>

In his Amended Original Petition Felder alleges at least six substantive causes of action in addition to seeking declaratory and injunctive relief.[54]  "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." <u>Hunt v. Washington State Apple Adver. Comm'n</u>, 97 S. Ct. 2434, 2443 (1977).  "To put it another way, the amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented." <u>Leininger</u>

---

[54]Amended Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 35; <u>see also</u> Motion to Remand, Docket Entry No. 14, p. 2 ¶ 3.

v. Leininger, 705 F.2d 727, 729 (5th Cir. 1983). Accordingly, whether the amount in controversy in this case exceeds $75,000 depends upon the "value of the right to be protected or the extent of the injury to be prevented" by the relief requested in Felder's Amended Original Petition. Id.

"The amount in controversy is measured from the perspective of the plaintiff." Burr v. JPMorgan Chase Bank, N.A., No. 4:11-CV-03519, 2012 WL 1016121, at *2 (S.D. Tex. Mar. 23, 2012) (citing Garcia, 351 F.3d at 640 n.4)). Felder argues that "there is no amount in controversy when injunctive relief [is] sought and Plaintiff's complaint is to preserve Plaintiff's right of possession."[55] However, in each of the cases that Felder cites to support his argument the plaintiff had brought a forcible detainer action to evict a non-paying occupant. See Deutsche Bank Nat. Trust Co. v. Kramer, No. CV-10-265-PHX-DGC, 2010 WL 1278867 (D. Ariz. Mar. 31, 2010); Bank of New York Trust Co. N.A. v. Olds, No. 3-08-CV-0630-K, 2008 WL 2246942 (N.D. Tex. May 30, 2008); JPMorgan Chase Bank, N.A. v. Coleman, No. G-06-688, 2007 WL 655629 (S.D. Tex. Feb. 27, 2007). Here, Felder alleges that he is the non-paying occupant, and he is seeking much more than mere possession -- he is seeking the entire bundle of rights that constitute ownership of property.

In his Amended Original Petition Felder alleges that "Defendants have jointly and severally conspired to deprive

---

[55]Motion to Remand, Docket Entry No. 14, p. 13 ¶ 38.

[Felder] of [his] right, title, and interest in and to the Homestead."[56]   He seeks declaratory relief "[s]etting aside the foreclosure" and "[i]njunctive relief against Defendants (temporary and permanent) prohibiting interference with [his] possession, title or occupancy of the Homestead."[57]   Therefore, from Felder's perspective, the rights to be protected are his rights as owner of the property. See, e.g., Martinez v. BAC Home Loans Servicing, LP, 777 F. Supp. 2d 1039, 1049 (W.D. Tex. 2010) ("At least one of the bundle of property rights that [the plaintiff] is seeking to enforce or protect through this litigation is his right to peacefully possess and enjoy his home. . . . From [the plaintiff's] perspective, then, it is the whole title and its 'bundle of rights' at issue."   (quoting Mapp v. Deutsche Bank Nat. Trust Co., No. 3:08-CV-695-WKW, 2009 WL 3664118, at *3 (M.D. Ala. Oct. 28, 2009))).

Felder's ownership interest in the property is most accurately reflected by the property's fair market value. See Farkas v. GMAC Mortgage, L.L.C., No. 12-20668, 2013 WL 6231114, at *2 (5th Cir. Dec. 2, 2013) ("In actions enjoining a lender from transferring property and preserving an individual's ownership interest, it is the property itself that is the object of the litigation; the value

---

[56]Amended Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 42 ¶ 33.

[57]Id. at 47 ¶¶ 62-64.

of that property represents the amount in controversy.");
Nationstar Mortg. LLC v. Knox, 351 F. App'x 844, 848 (5th Cir.
2009) ("'[W]hen the validity of a contract or a right to property
is called into question in its entirety, the value of the property
controls the amount in controversy.'" (quoting Waller v.
Professional Ins. Corp., 296 F.2d 545, 547-48 (5th Cir. 1961));
Morlock, L.L.C. v. JPMorgan Chase Bank, N.A., No. H-13-0734, 2013
WL 5781240, at *6 (S.D. Tex. Oct. 25, 2013) ("[Plaintiff]'s
ownership interest in the Property, including its right of
exclusive possession, is most accurately reflected by the
Property's fair market value, as that is the amount that
[Plaintiff] could expect to receive if it sold its ownership
interest on the open market."); Martinez, 777 F. Supp. 2d at 1051
(holding that when a "plaintiff seeks both a preliminary and
permanent injunction to prevent the defendant from foreclosing on
his home . . . the fair market value of his home is the proper
measure of the amount in controversy"); Mapp, 2009 WL 3664118, at
*3 ("Ownership, title and possession, thus, are not only the
objects of this lawsuit, but similarly represent the value of the
rights sought to be protected by an injunction enjoining the
foreclosure. In monetary terms, these benefits, objects and rights
are best measured by the value of the home itself." (internal
citations omitted)).

-20-

It is undisputed that the fair market value of the property exceeds $75,000.[58]  Indeed, Felder asserts in his Amended Original Petition that "the fair market value of the[] property is in excess of $250,000.00."[59]  Accordingly, "the value of the right to be protected" by Felder's action for declaratory and injunctive relief, and thus the amount in controversy, exceeds $75,000; and removal was proper.  Leininger, 705 F.2d at 729.

## III.  Felder's Motion for Leave to Amend

Felder moved to file his First Amended Complaint on December 3, 2013, in order "to address issues and allegations pointed out in this Court and in the previous state court petition at the time of removal."[60]  Felder's Motion to Amend asserts that his First Amended Complaint "removes allegations and claims based on the Home Affordable Modification Program ("HAMP") and streamlines allegations, in some cases, and offers additional specificity of facts and evidence as to the remaining claims against Defendants."[61]  Thus, Felder has represented that his First Amended Complaint neither asserts any new claims nor pleads any new

---

[58]Id. at 38 ¶ 7; Harris County Appraisal District Real Property Account Information, Exhibit B to Notice of Removal, Docket Entry No. 1-4.

[59]Amended Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 38 ¶ 7.

[60]Motion to Amend, Docket Entry No. 27, p. 1.

[61]Id.

theory of recovery not already addressed in his Amended Original Petition.

The Lender Defendants argue in their Opposition to Plaintiff's Motion to Amend that Felder has "attempt[ed] to avoid summary judgment by moving to amend his petition some ten months after removal and over three months after Lender Defendants filed their motion for summary judgment."[62]   The Lender Defendants argue that "Felder's proposed amended petition does not break any new legal ground, but merely seeks to cloud the water with -- among other things -- new unsubstantiated allegations concerning his payment history, securitization and un-related litigation involving Lender Defendants."[63]

A party may amend its pleading once as a matter of course within twenty-one days of serving it or twenty-one days after service of a motion under Rule 12(b), whichever is earlier.   Fed. R. Civ. P. 15(a).   In all other cases a party may only amend its pleadings with the written consent of the opposing party or with the court's leave.   Fed. R. Civ. P. 15(a)(2).   Courts should "freely give leave [to amend] when justice so requires."   Fed. R. Civ. P. 15(a)(2).   However, "[w]hether such an amendment should be granted is within the district judge's discretion."   <u>Overseas Inns S.A. P.A. v. United States</u>, 911 F.2d 1146, 1150 (5th Cir. 1990).

_____

[62]Lender Defendants' Opposition to Plaintiff's Motion to Amend, Docket Entry No. 28, p. 1 ¶ 1.

[63]<u>Id.</u>

-22-

"In exercising its discretion, the district court may consider such factors as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Id. at 1150-51 (quoting Foman v. Davis, 83 S. Ct. 227, 230 (1962)).

The Lender Defendants are concerned that "requiring them to reassert new summary judgment argument" would result in a "duplication of effort [and] would also be a waste of judicial resources" because "[a]nother dispositive motion would likely rely on the same facts and legal analysis employed in the pending summary judgment motion."[64]   However, the parties agree that Felder's First Amended Complaint does not assert any new claims or plead a theory of recovery not already addressed in Felder's Amended Original Petition.[65]   Indeed, the Lender Defendants argue that Felder's "claims cannot survive summary judgment for all of the reasons stated in Lender Defendants' pending motion for summary judgment."[66]   In light of the foregoing, Felder's Motion to Amend will be granted, and the court will analyze the Lender Defendants'

---

[64]Id. at 4 ¶ 7.

[65]See Motion to Amend, Docket Entry No. 27, p. 1; Lender Defendants' Opposition to Plaintiff's Motion to Amend, Docket Entry No. 28, p. 1 ¶ 1, p. 4 ¶¶ 7-10.

[66]Lender Defendants' Opposition to Plaintiff's Motion to Amend, Docket Entry No. 28, p. 4 ¶ 9; see also id. at 1 ¶ 1 ("[Felder's] proposed amended petition fails to raise any claims that would survive the pending motion for summary judgment.").

pending Motion for Summary Judgment in the context of Felder's
First Amended Complaint.

**IV.   The Lender Defendants' Motion for Summary Judgment**

Felder's First Amended Complaint alleges six substantive
causes of action in addition to seeking declaratory and injunctive
relief. Felder formulates his substantive causes of action as
claims based on (1) breach of contract, (2) the Lender Defendants'
alleged lack of standing to foreclose, (3) fraud, (4) interference
with existing contract, (5) quiet title, and (6) slander of title.[67]
The Lender Defendants have moved for summary judgment on all of
Felder's claims.[68]

---

[67]As noted in § III above, Felder has abandoned any claim based
on HAMP. Motion to Amend, Docket Entry No. 27, p. 1. In addition,
Felder repleads the factual allegations in his claims for wrongful
foreclosure due to improper notice as claims for breach of contract
and recasts his claims for wrongful foreclosure due to fraud as a
common-law fraud claim. Compare Amended Original Petition,
Exhibit A to Notice of Removal, Docket Entry No. 1-1, pp. 44-45
¶¶ 44-46, with Plaintiff's First Amended Complaint, attached to
Motion to Amend, Docket Entry No. 27-2, pp. 27-30 ¶¶ 87-98,
pp. 32-33 ¶¶ 111-19. As noted in § III above, the court will
analyze the Lender Defendants' Motion for Summary Judgment in the
context of Felder's First Amended Complaint.

[68]Felder has objected to the Lender Defendants' Exhibits A-1
through A-12 on the basis that "they are hearsay and have not been
properly authenticated." Felder's Response, Docket Entry No. 24,
p. 3 ¶ 6. Felder argues that Jane Cashel's affidavit is insuffi-
cient to authenticate the documents because "Ms. Cashel fails to
describe herself as a custodian of records." Id. However, as
noted by the Lender Defendants, such business records may be
authenticated "by the testimony of the custodian or another
qualified witness." Fed. R. Evid. 803. The Lender Defendants
argue that Cashel is a qualified witness. Bank of America's Reply,
Docket Entry No. 25, pp. 5-6 ¶¶ 12-15. "A qualified witness is one
(continued...)

## A.     Standard of Review

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

----

[68](...continued)
who can explain the system of record keeping and vouch that the requirements of Rule 803(6) are met; the witness need not have personal knowledge of the record keeping practice or the circumstances under which the objected to records were kept." United States v. Box, 50 F.3d 345, 356 (5th Cir. 1995) (citing United States v. Iredia, 866 F.2d 114, 119-20 (5th Cir. 1989)). Cashel's affidavit describes Bank of America's system of record keeping and vouches that the requirements of Rule 803(6) are met. Declaration of Jane Cashel, Exhibit A to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-1, pp. 1-3 ¶¶ 1-3, p. 5 ¶ 9.  Accordingly, Cashel is a qualified witness, and Felder's objection to Lender Defendants' Exhibits A-1 through A-12 is **DENIED**.  Felder's other objections based on Cashel's "fail[ure] to prove herself up as a custodian of records for Bank of America" and her "interpretation of documents, which have not been properly authenticated" are also **DENIED**.  Felder's Response, Docket Entry No. 24, pp. 3-4 ¶¶ 7-8.  The Lender Defendants have objected to Exhibits C and E of Felder's Response.  Bank of America's Reply, Docket Entry No. 25, p. 11 ¶ 27.  Because the court does not rely on either exhibit in reaching its conclusions, the Lender Defendants' objections are **DENIED AS MOOT**.

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting <u>Celotex</u>, 106 S. Ct. at 2553). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." <u>Id.</u> If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence that specific facts exist over which there is a genuine issue for trial. <u>Id.</u> (citing <u>Celotex</u>, 106 S. Ct. at 2553-54). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

## B.   **Felder's Claims for Breach of Contract**

Felder advances two arguments in support of his breach of contract claims. First, Felder argues that the Lender Defendants

"fail[ed] to follow Plaintiff's Deed of Trust requirements for acceleration of note, notice of default cure remedies and for notice of foreclosure sale."[69]   Second, Felder argues "that there was a contract between the parties under HAMP and BAC[70] breached the contract . . . by refusing to accept further monthly payments and instead elected to foreclose on Plaintiff's Homestead on June 7, 2011."[71]

The Lender Defendants argue that Felder cannot maintain a cause of action for breach of contract because he was in default.[72] Felder argues in his Response that the "Lender Defendant's mischaracterization of Plaintiff's mortgage defaults at inception in 2007 and erroneous payment records, which led to perpetual add-on of fees is a breach of Plaintiff's contract and is a direct cause of Plaintiff's initial default which was never cured or

---

[69]Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, p. 27 ¶ 87.

[70]BAC Home Loans Servicing LP.  BAC was the mortgage servicer for Felder's mortgage at the time of foreclosure.  See, e.g., May 17, 2010, Notice of Default, Exhibit A-7 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-8; Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, pp. 30-31 ¶¶ 101-102.  Defendant Bank of America is the successor by merger to BAC Home Loans Servicing LP.  Lender Defendants' Corporate Disclosure Statement and Certificate of Interested Parties, Docket Entry No. 4.

[71]Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, pp. 29-30 ¶ 95.

[72]Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23, pp. 21-22 ¶¶ 33-34.

-27-

corrected."[73]   The Lender Defendants argue in their Reply that regardless of whether Felder was in default in 2007, he "did not make his April 1, 2009 payment until May 13, 2010, and has not made a payment since."[74]

### 1.   Factual Allegations

Felder argues that he did not breach his obligations under either the original Note or subsequent loan modifications.[75]   The court has reviewed the relevant evidence produced by the parties pertaining to Felder's payment history and modifications to the parties' obligations under the original Note.   Felder has produced transaction history reports for 2007 and 2009 to evidence his payment history.[76]   The Lender Defendants have produced a similar chart detailing payments and adjustments to Felder's mortgage account between January of 2007 and December of 2012.[77]   Each payment entry in the produced reports contains two dates:  the date the payment was received and the scheduled monthly payment to which

---

[73]Felder's Response, Docket Entry No. 24, p. 11 ¶ 26.

[74]Bank of America's Reply, Docket Entry No. 25, p. 9 ¶ 20.

[75]Felder's Response, Docket Entry No. 24, pp. 2-3 ¶ 3; pp. 10-11 ¶¶ 23-26.

[76]Active Loan Mortgage Interest Statement, Exhibit A-1 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-4, p. 2; Active Loan Mortgage Interest Statement, Exhibit A-4 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-7.

[77]Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4.

it was applied.[78]  The Lender Defendants argue that Felder defaulted on the original Note in 2007 and on a subsequent loan modification in 2009.[79]

(a)   Felder's Alleged Default In 2007

The Lender Defendants allege that Felder "immediately defaulted on The Loan[] by failing to make his first two payments when due."[80]  Felder argues that he did not default in 2007 and that any appearance that he was in default is due to the Lender Defendants' faulty recordkeeping and the Lender Defendants' failure to draft his account when his payment was due.[81]

The Note states that Felder "will make [his] monthly payment on the first day of each month beginning on March 01, 2007" and that his "initial monthly payments will be in the amount of U.S. $2,222.32."[82]  Felder has produced evidence that he was enrolled in

---

[78]Id.; Active Loan Mortgage Interest Statement, Exhibit A-1 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-4, p. 2; Active Loan Mortgage Interest Statement, Exhibit A-4 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-7.

[79]Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23, pp. 21–22 ¶¶ 33–35, p. 28 ¶ 1.b, p. 29 ¶ 1.e; Bank of America's Reply, Docket Entry No. 25, pp. 1–2 ¶ 1, pp. 8–10 ¶¶ 19–22.

[80]Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23, p. 21 ¶ 34.

[81]Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, p. 6 ¶ 18; Felder's Response, Docket Entry No. 24, pp. 10–11 ¶ 25.

[82]Adjustable Rate Note, Exhibit B to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-10, p. 1.

Countrywide's PayPlan/24 automated payment service prior to February 15, 2007.[83]  Felder alleges that BAC drafted his personal bank account in February of 2007, prior to the date that his first payment was due under the Note.[84]

In fact, the evidence produced by both parties appears to indicate that Felder made two payments prior to his March 1, 2007, due date.[85]  The first, $900.38 on January 22, 2007, was applied entirely to interest.[86]  The second, $1,111.16 on February 22, 2007, was applied entirely to principal.[87]  It appears that neither payment was applied against Felder's upcoming March 1 scheduled payment, but instead applied to February 2007.[88]  Neither party has produced any evidence to explain the significance of these payments.[89]

---

[83]February 15, 2007, Correspondence from Countrywide to Felder, Exhibit A-2 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-5.

[84]Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, pp. 5-6 ¶ 16.

[85]Active Loan Mortgage Interest Statement, Exhibit A-1 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-4, p. 2; Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4, p. 2.

[86]Id.

[87]Id.

[88]Id.

[89]For instance, neither party has explained why the payments were drafted prior to the March 1, 2007, due date; why the total of the two payments ($2,011.54) does not equal a full monthly payment;
(continued...)

On April 2, 2007, Felder received a Notice of Default declaring that he had failed to make his March 1 and April 1 scheduled monthly payments and that he could cure his default by paying $4,555.76 before May 2, 2007.[90]   Felder alleges that he "asked BAC for an internal investigation" of the matter and "continu[ed] to make his $2,222.32 monthly mortgage payment."[91]   The evidence produced by both parties indicates that Felder made a $2,333.44 payment on April 2, 2007, which included a $111.12 late fee.[92]   The payment was applied to March 2007 rather than April 2007.[93]   Similarly, Felder made payments of $2,222.32 at the end of April, May, and June of 2007.[94]   Each payment was applied to the prior month rather than the upcoming month.[95]   In addition to these

---

[89](...continued)
why the allocation of principal and interest is inconsistent with other regular payment entries; or why the payments were applied to February 2007 rather than against Felder's upcoming scheduled monthly payment.

[90]Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23, p. 21 ¶ 34; April 2, 2007, Notice of Default, Exhibit A-6 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-7.

[91]Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, p. 6 ¶ 19.

[92]Active Loan Mortgage Interest Statement, Exhibit A-1 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-4, p. 2; Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4, p. 2.

[93]Id.

[94]Id.

[95]Id.

-31-

payments, Felder made seven more payments during 2007 and received three more Notices of Default.[96]

(b)   Felder's October 2008 Loan Modification

In the affidavit attached to his Response Felder admits that "[i]n 2008, I became unemployed and Countrywide changed my payments to $2,841.41."[97]   The parties have produced the first two pages of a five-page letter stating that Felder was approved for a loan modification and that "[i]n order for the modification to be valid, the enclosed documents need to be signed and returned."[98]   The first page of the letter states that Felder's "new modified monthly payment will be $2,841.42, effective with [his] November 1, 2008

---

[96]Active Loan Mortgage Interest Statement, Exhibit A-1 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-4, p. 2; Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4, pp. 2-3; August 2, 2007, Notice of Default, Exhibit A-6 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-7, p. 3; September 4, 2007, Notice of Default, Exhibit A-6 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-7, p. 5; October 3, 2007, Notice of Default, Exhibit A-6 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-7, p. 7.

[97]Affidavit of Larry D. Felder, Exhibit A to Felder's Response, Docket Entry No. 24-1, p. 2 ¶ 4; see also Affidavit of Larry D. Felder, Exhibit M to Amended Original Petition (Exhibit A to Notice of Removal), Docket Entry No. 1-3, p. 2 ¶ 3 ("I requested a loan modification to remedy debt, due to a medical hardship resulting economic decline in my finances and a dramatically increased mortgage payment.").

[98]October 2008 Loan Modification Correspondence, Exhibit C to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-11; October 2008 Loan Modification Correspondence, Exhibit A-9 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-10, p. 1; October 2008 Loan Modification Correspondence, Exhibit C to Amended Original Petition (Exhibit A to Notice of Removal), Docket Entry No. 1-2, p. 1.

payment" and that a total of $23,332.27, including $14,205.78 of interest, $185 of fees, and $8,941.49 of Escrow, would "be added to [Felder's] current principal balance."[99]   The letter also states that "[t]his Agreement will bring your loan current; however, you are still required to pay back the entire unpaid principal by the maturity date for your loan."[100]   The second page of the letter states:

> The following documents have been enclosed:
> Modification Agreement-Must be signed in the presence of a Notary.   The notary acknowledgment must be in recordable form.   All parties who own an interest in the property must sign the modification agreement as their name appears.[101]

There is no indication that any other documentation, such as proof of income, was required.[102]

Neither party has produced a copy of the modification agreement.[103]   However, the evidence produced indicates that both

_____

[99]Id.

[100]Id.

[101]October 2008 Loan Modification Correspondence, Exhibit A-9 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-10, p. 2; October 2008 Loan Modification Correspondence, Exhibit C to Amended Original Petition (Exhibit A to Notice of Removal), Docket Entry No. 1-2, p. 2.

[102]See id.

[103]The parties have also failed to produce the last three pages of the October 2008 Loan Modification Correspondence.   Although the Lender Defendants include three additional pages in Exhibit A-9 to their Motion for Summary Judgment, they are actually excerpts of a letter dated April 3, 2009.   Compare October 2008 Loan Modification Correspondence, Exhibit A-9 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-10, with April 2009 Loan Modification Correspondence, Exhibit D to Amended Original Petition (Exhibit A to Notice of Removal), Docket Entry No. 1-2, p. 7.

parties conformed to the agreement as represented in the October 23, 2008, letter. On November 28, 2008, Felder made his first $2,841.42 payment.[104] On December 17, 2008, $9,126.49 was added to Felder's principal balance, $8,941.49 was subtracted from his Escrow balance, and $185 was subtracted from his "Unapplied Total."[105] A "PRINCIPAL ADJUST[MENT]" was also made on December 17, 2008, that increased Felder's principal balance by $14,205.78 -- exactly the amount of interest to be capitalized when the loan modification took effect per the October 23, 2008, letter.[106]

On January 7, 2009, Felder made a payment of $2,842.[107] On January 16, 2009, Felder received a Notice of Default stating that he owed $12,074.10 in "Monthly Charges" as of November 1, 2008.[108] This figure appears to represent exactly three monthly payments of $4,024.70. Although neither party has explained how Felder's

---

[104]Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4, p. 4.

[105]Id.

[106]Id.; October 2008 Loan Modification Correspondence, Exhibit C to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-11; October 2008 Loan Modification Correspondence, Exhibit A-9 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-10, p. 1; October 23, 2008, Loan Modification Correspondence, Exhibit C to Amended Original Petition (Exhibit A to Notice of Removal), Docket Entry No. 1-2, p. 1.

[107]Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4, p. 4.

[108]January 16, 2009, Notice of Default, Exhibit A-6 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-7, p. 13.

monthly payment was calculated during this time period, a review of the evidence produced by both parties reveals that the Lender Defendants considered Felder's scheduled monthly payment amount to be $4,024.70. Between November of 2008 and October of 2009 each of Felder's payments was applied to "Partial Balance" or "Unapplied Total until they reached an amount in excess of $4,024.70, at which time an adjustment was made to apply the funds to principal, interest, and escrow.[109]

The January 16, 2009, Notice of Default credits Felder for $5,868.42 in his "Partial Payment Balance,"[110] which primarily consisted of Felder's payments on November 28, 2008, and January 7, 2009.[111] After accounting for additional charges, the Notice of

---

[109]Active Loan Mortgage Interest Statement, Exhibit A-4 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-7, p. 2; Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4, pp. 4-5. The treatment of each of Felder's payments as partial payments would continue for the remaining life of the loan. Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4, pp. 4-6. In pleading his fraud claim in his First Amended Complaint, Felder alleges for the first time that he "sent in erratic large monthly mortgage payments to Lender Defendant in reliance that such actions would rectify the delinquent status Countrywide and BAC represented was required to regain a current status or avoid foreclosure." First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, p. 26 ¶ 82. However, the evidence produced does not support an allegation of "erratic large monthly" payments. See Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4.

[110]January 16, 2009, Notice of Default, Exhibit A-6 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-7, p. 13.

[111]See Active Loan Mortgage Interest Statement, Exhibit A-4 to Plaintiff's First Amended Complaint, Docket Entry No. 27-7, p. 2; (continued...)

Default stated that Felder could cure his default by paying $6,819.48 "on or before February 15, 2009."[112]  On January 20, 2009, a $5,646.18 accounting entry adjusted Felder's "Unapplied Total" to reflect a regular payment of $4,024.70 that was applied to November of 2008.[113]

     (c)  Subsequent Proposed Loan Modifications

Felder was offered another Loan Modification in April of 2009.[114]  Felder has produced a letter stating that the proposed modification would "reduce [his] interest rate to 6%" and "result in a new payment amount of $1,476.26."[115]  The letter states that the modification would "take effect May 1, 2009 and [would] continue until April 30, 2010."[116]  In addition, the letter states that "[a]ccepting the enclosed modification also resolves your past

--------------------------------------------

[111](...continued)
Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4, pp. 4-5.

[112]January 16, 2009, Notice of Default, Exhibit A-6 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-7, p. 13.

[113]Active Loan Mortgage Interest Statement, Exhibit A-4 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-7, p. 2; Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4, p. 4.

[114]April 2009 Loan Modification Correspondence, Exhibit D to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-12; April 2009 Loan Modification Correspondence, Exhibit D to Amended Original Petition (Exhibit A to Notice of Removal), Docket Entry No. 1-2, p. 7.

[115]Id.

[116]Id.

due amount of $12,293.15 as of March 30, 2009,"[117] and that "this modification will bring your loan current."[118]

The letter states that in order to accept the modification Felder must both "[s]ign and date the enclosed modification document in the presence of a notary" and "include . . . income information applicable to [his] situation with [his] signed and notarized loan-modification agreement."[119]   The letter also specifically states that "this offer is contingent upon verification of your income.  Even if you sign and return the loan modification documents; **this modification will not take effect if we are not able to verify your income**."[120]

Both parties have produced a copy of the Loan Modification Agreement that was signed by Felder on March 12, 2010.[121]   But

---

[117]Id.

[118]April 2009 Loan Modification Correspondence, Exhibit D to Amended Original Petition (Exhibit A to Notice of Removal), Docket Entry No. 1-2, p. 9.

[119]Id. at 8; Exhibit A-9 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-10, p. 5.

[120]April 2009 Loan Modification Correspondence, Exhibit D to Amended Original Petition (Exhibit A to Notice of Removal), Docket Entry No. 1-2, p. 3; October 2008 Loan Modification Correspondence, Exhibit A-9 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-10, p. 4.

[121]Loan Modification Agreement, Exhibit A-3 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-6; Loan Modification Agreement, Exhibit A-11 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-12; Loan Modification Agreement, Exhibit A-3 to Felder's Response,
(continued...)

neither party has produced a copy of the April 2009 Loan Modification Agreement signed by Felder before the May 3, 2009, deadline[122] or a copy signed by the Lender Defendants.

The Lender Defendants did not make any adjustments to Felder's account in accordance with the proposed loan modification.[123] Felder, however, began making payments of $1,476.26 in June of 2009.[124]   Felder continued making monthly payments of $1,476.26 through March of 2010.[125]

---

[121](...continued) Docket Entry No. 24-4.  Felder allegedly provided this copy to the Lender Defendants in April and June of 2010 as a replacement for the copy that the Lender Defendants allegedly misplaced.  See Fax Transmittal, Exhibit E to Amended Original Petition (Exhibit A to Notice of Removal), Docket Entry No. 1-2, p. 15; April 21, 2010, Correspondence Re: Offer of Modification, Exhibit H to Amended Original Petition (Exhibit A to Notice of Removal), Docket Entry No. 1-2, p. 23.

[122]April 2009 Loan Modification Correspondence, Exhibit D to Amended Original Petition (Exhibit A to Notice of Removal), Docket Entry No. 1-2, p. 2; October 2008 Loan Modification Correspondence, Exhibit A-9 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-10, p. 5.

[123]See Active Loan Mortgage Interest Statement, Exhibit A-4 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-7, p. 2; Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4, p. 5.

[124]Id.

[125]Active Loan Mortgage Interest Statement, Exhibit A-4 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-7, p. 2; Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4, pp. 5-6.

Felder was offered another Loan Modification in November of 2009.[126] Felder was denied the modification after failing to make the payments required during the trial period.[127]

   2.   <u>Felder has failed to raise a genuine issue of material fact for trial as to whether he was in default when the Lender Defendants foreclosed.</u>

"The elements of a breach of contract claim under Texas law are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from the breach." <u>Lewis v. Bank of Am. NA</u>, 343 F.3d 540, 544-45 (5th Cir. 2003) (citing <u>Palmer v. Espey Huston & Assocs.</u>, 84 S.W.3d 345, 353 (Tex. App.—Corpus Christi 2002, pet. denied)). The Lender Defendants argue that Felder cannot maintain a cause of action for breach of contract because he was in default.[128] They allege that Felder "did not make his April 1, 2009 payment until May 13, 2010,"[129] citing an entry in the Loan History Statement dated

---

[126]November 2009 Loan Modification Correspondence, Exhibit A-5 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-8; November 2009 Loan Modification Correspondence, Exhibit A-10 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-11.

[127]April 26, 2010, Correspondence from Bank of America to Felder Re: Trial Plan Default, Exhibit A-6 to Felder's Response, Docket Entry No. 24-7.

[128]Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23, pp. 20-21 ¶¶ 33-34.

[129]Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23, p. 28 ¶ 1.b; Bank of America's Reply, Docket Entry No. 25 p. 9 ¶ 20.

May 13, 2010, representing a $4,033.83 payment applied to April of 2009.[130]  Although the entry is labeled "REGULAR PAYMENT," it is clear based on the cancelled checks produced by Felder that Felder's actual payments were recorded using the label "MISC. POSTING" and applied to "Partial Balance" or "Unapplied Total."[131]

However, despite making payments in accordance with the April 2009 proposed loan modification, Felder has not produced any evidence to suggest that he was ever approved for the modification. The only copy of the proposed Loan Modification Agreement that either party has produced was signed by Felder in March of 2010.[132]

---

[130]Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4, p. 6.

[131]See Cancelled Checks, Exhibit G to Felder's First Amended Complaint, Docket Entry No. 27-15; Active Loan Mortgage Interest Statement, Exhibit A-4 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-7, p. 2; Loan History Statement, Exhibit A-3 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-4, pp. 5-6.

[132]Loan Modification Agreement, Exhibit A-3 to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-6; Loan Modification Agreement, Exhibit A-11 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-12; Loan Modification Agreement, Exhibit A-3 to Felder's Response, Docket Entry No. 24-4. Jane Cashel's affidavit states that "Felder did not sign and return the loan modification agreement until March 12, 2010." Declaration of Jane Cashel, Exhibit A to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-1, p. 6 ¶ 14. However, this assertion is belied by the records produced with Cashel's affidavit. The Account Status Listing produced by the Lender Defendants indicates that Felder's application was reviewed on April 14, 2009, and May 11, 2009, and denied because Felder "failed to remit required proof of income documentation." Account Status Listing, Exhibit A-4 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-5, (continued...)

The letter accompanying the proposed modification makes clear that the modification was conditional upon verification of Felder's income.[133] The evidence produced by the Lender Defendants indicates that Felder's application was denied because Felder "failed to remit required proof of income documentation."[134] Furthermore, Felder has not produced a document that would comply with the statute of frauds to establish that he was entitled to make payments of $1,476.26.[135]   See BACM 2001-1 San Felipe Rd. Ltd. P'ship v. Trafalgar Holdings I, Ltd., 218 S.W.3d 137, 144-48 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

In light of the foregoing, and drawing all inferences in a light most favorable to Felder, the court concludes that Felder has failed to produce sufficient evidence to establish that a genuine issue of material fact exists as to whether he was in default when the Lender Defendants foreclosed on the property.   Accordingly,

---

[132](...continued) pp. 7-8.   This information is also reproduced in the HomeSaver Workout Notes produced by the Lender Defendants.   HomeSaver Workout Notes, Exhibit A-8 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-9, pp. 5-6.

[133]April 2009 Loan Modification Correspondence, Exhibit D to Amended Original Petition (Exhibit A to Notice of Removal), Docket Entry No. 1-2, pp. 8-9; Exhibit A-9 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-10, pp. 4-5.

[134]Account Status Listing, Exhibit A-4 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-5, pp. 7-8; HomeSaver Workout Notes, Exhibit A-8 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-9, pp. 5-6.

[135]Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23, pp. 24-25 ¶¶ 41-44.

summary judgment is appropriate with regard to Felder's claim that the Lender Defendants "breached the contract . . . by refusing to accept further monthly payments and instead elected to foreclose."[136]

3.   Felder has failed to raise a genuine issue of material fact for trial as to whether the Lender Defendants failed to provide proper notice prior to foreclosure.

Felder alleges that the Lender Defendants did not provide the notice required by the Deed of Trust thirty days prior to the May 16, 2011, Notice of Acceleration and Sale.[137]   The relevant portion of the Deed of Trust states:

> 22.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all

---

[136]Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, pp. 29-30 ¶ 95.

[137]Id. at 27-29 ¶¶ 87-92; Felder's Response, Docket Entry No. 24 p. 19 ¶ 50.

expenses incurred in pursuing the remedies provided in
this Section 22, including, but not limited to,
reasonable attorneys' fees and costs of title evidence.
For the purposes of this Section 22, the term "Lender"
includes any holder of the Note who is entitled to
receive payments under the Note.[138]

The Lender Defendants have produced a Notice of Default in
compliance with the Deed of Trust dated May 17, 2010.[139]

Felder appears to argue that the Lender Defendants were
required to provide such a notice exactly thirty days before
acceleration.[140]   However, the Deed of Trust specifically states
that the Lender Defendants must provide Felder with "not less than
30 days" to cure his default before accelerating the loan.[141]   The
May 17, 2010, Notice of Default specifies that Felder may cure the
default by paying $52,747.57 "on or before June 16, 2010."[142]   The
Lender Defendants did not accelerate the loan until nearly a year
later on May 16, 2011.[143]

---

[138]Deed of Trust, Exhibit L to First Amended Complaint,
attached to Motion to Amend, Docket Entry No. 27-20, p. 13 ¶ 22;
Deed of Trust, Exhibit A-2 to Lender Defendants' Motion for Summary
Judgment, Docket Entry No. 23-3, p. 16 ¶ 22.

[139]May 17, 2010, Notice of Default, Exhibit A-7 to Lender
Defendants' Motion for Summary Judgment, Docket Entry No. 23-8.

[140]Plaintiff's First Amended Complaint, attached to Motion to
Amend, Docket Entry No. 27-2, p. 9 ¶ 32.

[141]Deed of Trust, Exhibit L to First Amended Complaint, Docket
Entry No. 27-20, p. 13 ¶ 22; Deed of Trust, Exhibit A-2 to Lender
Defendants' Motion for Summary Judgment, Docket Entry No. 23-3,
p. 16 ¶ 22.

[142]May 17, 2010, Notice of Default, Exhibit A-7 to Lender
Defendants' Motion for Summary Judgment, Docket Entry No. 23-8.

[143]Notice of Acceleration and Sale, Exhibit A-13 to Lender
Defendants' Motion for Summary Judgment, Docket Entry No. 23-14.

-43-

Felder also argues that he was entitled to two Notices of Default -- one at least thirty days prior to acceleration pursuant to the Deed of Trust, and one at least twenty days prior to acceleration under the Texas Property Code.[144] Felder has cited no authority, and the court is aware of none, to suggest that a single notice is not sufficient to satisfy the Lender Defendants' obligations. The court therefore concludes that Felder has failed to establish that a genuine issue of material fact exists as to whether the Lender Defendants provided him with proper notice prior to the foreclosure sale. Accordingly, summary judgment is appropriate on Felder's claims regarding the Lender Defendants' alleged failure to properly notice.

## C.    The Lender Defendants Had Standing to Foreclose

Felder appears to advance three arguments why the Lender Defendants lacked standing to foreclose: (1) the securitization of his mortgage rendered his Note unsecured and the Deed of Trust unenforceable; (2) the August 30, 2010, assignment to BONY Mellon was void; and (3) BAC was not a mortgagee entitled to foreclose under the Deed of Trust.[145] The Lender Defendants argue that they

---

[144]Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, pp. 12-13 ¶ 43; Felder's Response, Docket Entry No. 24, p. 20 ¶ 52.

[145]Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, pp. 10-11 ¶¶ 37-39, pp. 14-27 ¶¶ 47-85, pp. 30-32 ¶¶ 99-109; Felder's Response, Docket Entry No. 24, pp. 12-18 ¶¶ 27-47.

"have standing to foreclose as both the holder of the note and as mortgage servicer."[146]

    1.   <u>The securitization of Felder's mortgage did not affect the Lender Defendants' standing to foreclose.</u>

Felder advances several arguments as to why the securitization process rendered the Note and Deed of Trust unenforceable. Felder's arguments rely heavily on the effect of the Pooling and Servicing Agreement ("PSA") governing the CWABS Asset-Backed Certificates Trust ("CWABS") in relation to Texas Real Property Law.

        (a)   The CWABS PSA does not affect the enforceability of Felder's Deed of Trust.

Felder alleges that his "mortgage loan was bifurcated into three parts": the Note, the Deed of Trust, and "the loan payment obligations sold or stripped out of the original mortgage loan," which Felder terms "the Intangible Obligations."[147] Felder alleges that "the income stream from [his] loan payments (Intangible Obligation) is or was owned by various classes of investors (Certificateholders of the CWABS Trust) in a unified manner as described by the Prospectus" and that "[e]ach class of the CWL 2007-2 trust owns a different partial interest in the Felder's Intangible Obligation."[148]

---

[146]Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23, p. 13 ¶ 15.

[147]Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, p. 15 ¶ 50.

[148]<u>Id.</u> ¶ 49.

Felder argues that the assignment of his intangible payment obligations to various classes of the CWABS trust rendered the Note and Deed of Trust unenforceable because "[a] true sale of Note and the Deed of Trust to all and each of the potential multiple owners of the certificates must be compliant with the local laws of jurisdiction and such division is a legal impossibility" because such a "transfer lacks supporting tangible law . . . as the rights to the Note and Deed of Trust can only be to one party."[149] Felder's argument is misplaced because, as he acknowledges, the PSA is not an assignment of the Note or Deed of Trust.

The PSA requires the parties selling mortgages to CWABS to deliver the "Mortgage File" either prior to or within thirty days of the trust's closing date.[150]   The Mortgage File includes the original promissory note, the deed of trust, and "a duly executed assignment of the [Deed of Trust] to [CWABS], by [BONY Mellon], as trustee."[151]  At most, the PSA reflects a promise to assign the Note and Deed of Trust.  Felder acknowledges this fact, asserting that "[t]he initial and subsequent certificate transactions involving divided intangible payment stream of the Intangible Obligation do

---

[149]Id. at 16 ¶ 52.

[150]PSA, Exhibit E to Plaintiff's First Amended Petition, Docket Entry No. 27-13, pp. 67-74.

[151]Id.; see also Prospectus Supplement, Exhibit M to Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-21, pp. 44-45.  An assignment is not even required for mortgages that are part of the MERS system to be in compliance with the PSA.  Id.

not transfer the rights to the Tangible Note or the Deed of Trust to the owners of the intangible payment stream."[152]  Accordingly, at the time of securitization there was no assignment "of Note and the Deed of trust to all and each of the potential multiple owners of the certificates [that] must be compliant with the local laws of jurisdiction."[153]   Therefore, Felder's argument that his Deed of Trust is unenforceable under the terms of the PSA has no merit.

> (b)   Felder's claims based on the "split-the-note" theory
>        fail as a matter of law.

Felder also argues that the Lender Defendants assigned the Intangible Obligation to CWABS prior to assigning the Note or Deed of Trust, and that this process renders the Note and Deed of Trust unsecured and unenforceable.[154]   Felder alleges that "[t]o be compliant with laws of negotiation, transfer of ownership and rights to enforce the Tangible Note secured by a Deed of Trust require that a true sale of Note and the Deed of Trust be executed prior to the stripping of partial interest in the tangible instruments."[155]   Felder cites no authority for this conclusion.[156] He elaborates on his claim by arguing that

---

[152]Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, p. 16 ¶ 52.

[153]Id. at 16 ¶ 52.

[154]Id. at 17 ¶ 56.

[155]Id. at 16 ¶ 52.

[156]Id.

> A properly recorded assignment of the Deed of Trust memorializes the Note's negotiation, but does not cause the Note's transfer.  For a Note to change ownership and remain secured through the Deed of Trust each and every transfer of the Note, by indorsement or negotiation, must be performed with a parallel assignment to remain as a secured party of record.  If a Note is indorsed and negotiated to one party while the Deed of Trust is assigned to another party, a separation between the Ownership of the Note evidencing the Tangible Obligation and the Ownership of the Conditions which secure the Intangible Obligation to Real Property occurs and such is a legal impossibility.  As such bifurcation is impossible, there is no lawful mechanism to allow for a security securing a Note to follow an Intangible Payment Stream to allow an Intangible owner to be a party perfected of record to the Note.[157]

To the extent that Felder relies on the theory that "splitting" or "bifurcating" the Note from the Deed of Trust renders either unenforceable, his claims have no merit under Texas law.  The "split-the-note" theory posits that "the 'transfer of [the] deed of trust . . . "splits" the note from the deed of trust, thus rendering both null.'" Wiley v. Deutsche Bank Nat. Trust Co., No. 12-51039, 2013 WL 4779686, at *1 (5th Cir. Sept. 6, 2013) (quoting Martins v. BAC Home Loans Servicing, L.P., 722 F.3d 249, 254 (5th Cir. 2013)).  "In order to foreclose, the theory goes, a party must hold both the note and the deed of trust." Id. (quoting Martins, 722 F.3d at 254).  However, "Texas courts have explained on multiple occasions that a note and a deed of trust constitute separate actions." Id. at *2.  "It is so well settled as not to be controverted that the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure

---

[157]Id. at 17 ¶ 56.

of lien are severable, and a plaintiff may elect to seek a personal judgment without foreclosing the lien, and even without a waiver of the lien." Martins, 722 F.3d at 255 (quoting Carter v. Gray, 81 S.W.2d 647, 648 (Tex. Comm'n App. 1935)).

"The duality of the lien and the note means that the beneficiary of the lien can be different from the holder of the note." Wiley, 2013 WL 4779686, at *2. "'The party to foreclose need not possess the note itself.' So long as it is a beneficiary named in the deed of trust or an assign, that party may exercise its authority even if it does not hold the note itself." Id. (internal citations omitted) (quoting Martins, 722 F.3d at 255). Thus, "the split the note theory is . . . inapplicable under Texas law where the foreclosing party is a [mortgagee] and the mortgage has been properly assigned." Id. (quoting Martins, 722 F.3d at 255) (internal quotation marks omitted); see also Martins, 722 F.3d at 255 ("A deed of trust 'gives the lender as well as the beneficiary the right to invoke the power of sale,' even though it would not be possible for both to hold the note." (quoting Robeson v. Mortgage Elec. Registration Sys., Inc., No. 02-10-00227-CV, 2012 WL 42965, at *6 (Tex. App.—Fort Worth Jan. 5, 2012, pet. denied))).

Felder's argument that securitization of his mortgage required that "a true sale of Note and the Deed of Trust be executed prior to the stripping of partial interest in the tangible instruments" is also unavailing.[158] Felder alleges that

---

[158]Id. at 16 ¶ 52.

> [m]ultiple classes of the CWL 2007-2 Trust are/were the
> owners of the Felder Intangible Obligation, however,
> according to Texas State Law, multiple classes of the CWL
> 2007-2 Trust can only be entitled to enforce the Felder
> Deed of Trust if multiple classes of the CWL 2007-2 Trust
> were transferred the rights to the Felder Deed of Trust
> by way of assignments pursuant to Recordation/Assignment
> Statutes.[159]

However, as Felder acknowledges, "[t]he initial and subsequent

certificate transactions involving divided intangible payment

stream of the Intangible Obligation do not transfer the rights to

the Tangible Note or the Deed of Trust to the owners of the

intangible payment stream."[160]   Furthermore, Felder cites no

authority for his contention that "multiple classes of the CWL

2007-2 Trust [are] entitled to enforce the Felder Deed of Trust."[161]

Courts routinely reject arguments that securitization of a mortgage

renders the Deed of Trust unenforceable.   See Marban v. PNC

Mortgage, No. 3:12-CV-3952-M, 2013 WL 3356285, at *10 (N.D. Tex.

July 3, 2013) (collecting cases).

> 2.   Felder has failed to raise a genuine issue of material fact
> as to the validity of the August 30, 2010, assignment.

Felder argues that the Lender Defendants lacked standing to

foreclose because the August 30, 2010, assignment was void.[162]

_____

[159]Id. at 18 ¶ 59; see also id. at 20 ¶ 62 ("In contradiction
to law, the Felder Deed of Trust must have been duly assigned to
multiple classes of the CWL 2007-2 Trust for multiple classes of
the CWL 2007-2 Trust to be entitled to enforce the Felder Deed of
Trust.").

[160]Id. at 16 ¶ 52.

[161]Id. at 20 ¶ 62; see also id. at 18 ¶ 59.

[162]Id. at 18-24 ¶¶ 58-72.

Felder advances three arguments as to why the August 30, 2010, assignment to BONY Mellon was void:  (1) the assignment was forged, (2) the signer lacked authority to execute the assignment, and (3) the assignment violated the terms of the PSA.  Felder's claims fail because he has not produced any evidence to suggest that the assignment was void, and he does not have standing to challenge the assignment.

> (a)  Felder has produced no evidence to suggest that the August 30, 2010, assignment to BONY Mellon was void.

The Lender Defendants have presented evidence of standing to foreclose through a facially valid assignment, which was signed by Craig Hooley for BAC, as Servicer, on behalf of MERS acting solely as nominee for America's Wholesale Lender.[163]  The assignment was recorded in Harris County, Texas, on September 28, 2010.[164]  See Morlock, L.L.C. v. JP Morgan Chase Bank, N.A., No. 12-20623, 2013 WL 2422778, at *2 (5th Cir. June 4, 2013) ("[Lender] presents evidence of this standing [to foreclose] through a facially valid assignment, which was signed by MERS's assistant secretary with a proper corporate acknowledgment and recorded in the county clerk's

---

[163]Assignment of Mortgage, Exhibit A-5 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-6.  The Lender Defendants also argue that Felder lacks standing to challenge the assignment of his mortgage.  Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23, p. 2 ¶ 2, pp. 6-7 ¶¶ 16-18, p. 19 ¶ 46.

[164]Assignment of Mortgage, Exhibit A-5 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-6.

office.").   Because  "[r]eal  property  records  often  contain
transfers  taking  place  many  years  in  the  past[,]  .  .  .  Texas
'view[s]  with  suspicion  and  distrust  attempts  to  discredit
certificates  of  acknowledgment,'  under  which  the  transfer  is
presumptively  valid  and  contradicting  evidence  'must  be  clear,
cogent,  and  convincing  beyond  reasonable  controversy.'"    Id.
(quoting  Ruiz v. Stewart Mineral Corp.,  202 S.W.3d 242, 248 (Tex.
App.—Tyler 2006, pet. denied)).

     Felder  fails  to  plead  any  facts  remotely  approaching  this
standard.   Felder  alleges  that  the  "Lender  Defendants  have  failed
to  provide  legal,  verifiable  proof  of  assignment  and  ownership  to
The  Bank  of  New  York  Mellon  .  .  .  besides  the  void  document  that
Substitute  Trustee,  West  &  Associate  LLP  typed  up,  notarized  and
filed  after  having  conducted  a  defective  foreclosure  sale  of
Plaintiff's  homestead."[165]    "This  'naked  assertion[]  devoid  of
further  factual  enhancement'  fails  to  state  a  plausible  claim  for
relief."  Id. (citing Iqbal, 129 S. Ct. at 1949).

          (b)   Felder  lacks  standing  to  challenge  the  assignment.

     Felder  alleges  "that  the  assignment  of  the  Deed  of  Trust  is
due  to  the  lack  of  capacity  and  authority  of  the  acting  Defendants"
and  "request[s]  a  declaration  that  the  void  assignments  be  set
aside."[166]  However,  Felder  lacks  standing  to  challenge  the  validity

---

     [165]Felder's Response, Docket Entry No. 24, p. 15 ¶ 40.

     [166]Id. at 7 ¶ 16.

of the August 30, 2010, assignment on the basis of the assignor's alleged lack of authority.  <u>See</u> <u>Reinagel</u>, 735 F.3d at 228.

In <u>Reinagel</u> the plaintiff-homeowners sought declaratory and injunctive relief on the basis that the assignee of their mortgage lacked standing to foreclose.  <u>Id.</u> at 222-25.  The Fifth Circuit analyzed the effect of two mortgage assignments challenged by the plaintiff-homeowners, noting that "the first instrument assigned only the deed of trust, whereas the second instrument assigned both the deed of trust and 'the certain note(s) described therein.'"  <u>Id.</u> at 225.  The court ultimately held that the second assignment was valid against the plaintiffs and "reaffirm[ed] that under Texas law, facially valid assignments cannot be challenged for want of authority except by the defrauded assignor."  <u>Id.</u> at 228.

Here, the facially valid assignment, like the second instrument in <u>Reinagel</u>, assigns both the Deed of Trust and the "note or notes therein described or referred to."[167]  <u>See id.</u> at 225 ("[T]he second instrument also expressly transferred "the certain note(s) described [in the deed of trust]."").  Although Felder would have standing to "defend 'on any ground which renders the assignment void,'" his challenge based on the signer's alleged lack of authority would render the assignment, "like any other unauthorized contract, [] not void, but merely voidable at the election of the defrauded principal."  <u>Id.</u> at 226 (quoting

---

[167]Assignment of Mortgage, Exhibit A-5 to Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23-6.

-53-

Tri-Cities Const., Inc. v. Am. Nat. Ins. Co., 523 S.W.2d 426, 430
(Tex. Civ. App.—Houston [1st Dist.] 1975, no writ)).  Thus, the
signer's alleged lack of authority, even accepted as true, does not
furnish Felder with a basis to challenge the assignment.  Id.

The same principle applies to Felder's claims that the
assignment was void because it was in violation of the PSA.  Felder
argues that when his Deed of Trust was assigned on August 30, 2010,
"the CWABS 2007-2 was closed per its PSA agreement which also
substantiates and supports Plaintiff's allegations that the
purported recordation of the assignment of Mortgagee beneficiary
interest under Plaintiff's Deed of Trust to [BONY Mellon] was void
and an impossibility."[168]  Felder alleges that the trust is a
New York asset-backed trust and that New York law applies.[169]  See
Green v. Bank of Am. N.A., No. H-13-1092, 2013 WL 3937070, at *3
(S.D. Tex. July 30, 2013) ("[Plaintiff] alleges that the trust is
a New York asset-backed trust.  New York law applies.").

"Under New York law 'every sale, conveyance or other act of
the trustee in contravention of the trust, except as authorized by
this article and by any other provision of law, is void.'"  Id.
(quoting N.Y. Est. Powers & Trusts Law § 7-2.4).  However,
"[c]ourts applying New York law have treated actions by trustees as
voidable."  Id. (citing Mooney v. Madden, 597 N.Y.S.2d 775, 776

---

[168]Plaintiff's First Amended Complaint, attached to Motion to
Amend, Docket Entry No. 27-2, pp. 20-21 ¶ 64.

[169]Id. at 22 ¶ 68; see also Prospectus Supplement, Exhibit M to
Plaintiff's First Amended Complaint, attached to Motion to Amend,
Docket Entry No. 27-21, pp. 4, 68.

(N.Y. App. Div. 1993)); <u>see also</u> <u>Sigaran v. U.S. Bank Nat. Ass'n</u>,
No. H-12-3588, 2013 WL 2368336, at *3 (S.D. Tex. May 29, 2013)
("Despite New York law's use of the term 'void,' courts applying
New York law have treated ultra vires actions by trustees as
voidable and capable of ratification."); <u>Calderon v. Bank of Am.
N.A.</u>, 941 F. Supp. 2d 753, 766 (W.D. Tex. 2013) (collecting
cases).[170]  In addition, the Fifth Circuit has "found that borrowers
lacked standing to challenge the transfer of a note in violation of
the terms of the PSA."  <u>Farkas</u>, 2013 WL 6231114, at *3 (citing
<u>Reinagel</u>, 735 F.3d at 228).  Accordingly, because assignments made
after the trust's closing date are voidable, rather than void,
Felder cannot challenge the assignments of his mortgage.  <u>Green</u>,
2013 WL 3937070, at *3.

> 3.  <u>BAC had standing to foreclose as mortgage servicer.</u>

Felder "claims that Defendant AWL[171] and BAC have no standing
to foreclose on the Note and under the Deed of Trust because

---

[170]Felder cites <u>Wells Fargo Bank, N.A. v. Erobobo</u>, 972 N.Y.S.2d
147 (N.Y. Sup. Ct. 2013) for the proposition that an assignment to
a trust after the closing date is void rather than voidable.
Plaintiff's First Amended Complaint, attached to Motion to Amend,
Docket Entry No. 27-2, p. 22 ¶ 68.  The court finds <u>Erobobo</u>'s
reasoning unpersuasive.  <u>See</u> <u>Halacy v. Wells Fargo Bank, N.A.</u>,
No. 12-11447-TSH, 2013 WL 6152351, at *3 (D. Mass. Nov. 21, 2013)
("<u>Erobobo</u> has been criticized and multiple federal courts,
including in this District, have held that under New York law, an
assignment of a mortgage into a trust in violation of the terms of
the PSA is voidable, not void.").  Neither is the court persuaded
by any of the other cases Felder cites in support of this
proposition.  <u>See</u> Plaintiff's First Amended Complaint, attached to
Motion to Amend, Docket Entry No. 27-2, p. 22 ¶ 68.

[171]America's Wholesale Lender is the d/b/a of defendant
Countrywide.  Lender Defendants' Corporate Disclosure Statement and
Certificate of Interested Parties, Docket Entry No. 4, p. 1.

Defendant BAC is not the owner of the Note and the Deed of Trust for which i[t] intends to foreclose."[172]   The Lender Defendants argue that BAC had standing to foreclose as the mortgage servicer under Texas Law.[173]

"The Texas Property Code provides that a 'mortgage servicer' may administer a foreclosure on behalf of a mortgagee . . . ." Martins, 722 F.3d at 255 (quoting Tex. Prop. Code § 51.0025).  The Fifth Circuit has held that MERS "qualifies as a mortgagee" under Texas law.  Id.  A mortgagee also includes "the grantee, beneficiary, owner, or holder of a security instrument."  Id. (citing Tex. Prop. Code § 51.0001(4)).  "In either event, the mortgage servicer need not hold or own the note and yet would be authorized to administer a foreclosure."  Id.  Accordingly, Felder's argument that BAC lacked standing to foreclose because it did not own the Note and Deed of Trust has no merit.

## D.  Felder's Fraud Claims

To prevail on a fraud claim under Texas law a plaintiff must prove that (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to

---

[172]Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, p. 30 ¶ 100.

[173]Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23, p. 15 ¶ 19.

act upon the representation; (4) the plaintiff actually and justifiably relied upon the representation; and (5) the plaintiff thereby suffered an injury. <u>Ernst & Young, L.L.P. v. Pacific Mut. Life. Ins. Co.</u>, 51 S.W.2d 573, 577 (Tex. 2001). Federal Rule of Civil Procedure 9(b) imposes a heightened level of pleading for fraud claims. A party bringing a fraud claim "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The plaintiff must therefore "'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" <u>Sullivan v. Leor Energy, LLC</u>, 600 F.3d 542, 551 (5th Cir. 2010) (quoting <u>ABC Arbitrage v. Tchuruk</u>, 291 F.3d 336, 350 (5th Cir. 2002)).

The most detail that Felder provides with regard to his fraud claims is his allegation that

> Lender Defendant Bank of America[] misrepresented and erroneously communicated to Plaintiff that his mortgage loan was immediately delinquent and in default in 2007 after his settlement and closing, erroneous[ly] and intentionally misrepresented by telephone and mail, Plaintiff's accounting of payment history, incomplete and inaccurate mortgage statement documents and accounting of late fees, and conducted a fraudulent and illegal foreclosure of Plaintiffs homestead.[174]

The Lender Defendants argue that these allegations are insufficient to establish a genuine issue of material fact with regard to

---

[174]Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry no. 27-2, p. 33 ¶ 116.

Felder's fraud claims.[175]   The court agrees.   Felder has not specified any statement contended to be fraudulent or explained why it was fraudulent.   Accordingly, summary judgment is appropriate on Felder's fraud claims.

**E.   Felder's Claims for Interference with Existing Contract**

Felder argues that "[t]here existed a contract (Deed of Trust) that is subject to interference between Plaintiff and the original lender that is not BAC.; America's Wholesale Lender is the original Mortgagee, with MERS acting as a nominee and beneficiary" and that "[t]here is a willful and intentional act of interference by BAC, BONY MELLON and Substitute Trustee by foreclosing on Plaintiff's Homestead without proper documented (void) assignment" of the Note, Deed of Trust, or "mortgagee beneficiary interest."[176]   The Lender Defendants argue that they had standing to foreclose and that Felder has failed to produce any evidence that would support a claim of tortious interference.[177]

"A tortious interference cause of action is established if the plaintiff proves:   (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference;

---

[175]Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23, pp. 22–23 ¶¶ 36–37.

[176]Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, pp. 33–34 ¶ 121(a),(b).

[177]Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23, pp. 26–27 ¶¶ 47–48.

(3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss resulted." <u>Friendswood Dev. Co. v. McDade & Co.</u>, 926 S.W.2d 280, 282 (Tex. 1996). As explained in § IV.C above, the Lender Defendants had standing to foreclose on Felder's property. Felder's claim that the Lender Defendants interfered with his Deed of Trust by foreclosing thus has no merit. Accordingly, summary judgment is appropriate on Felder's claims for interference with existing contract.

## F.   Felder's Quiet-Title Claims

A suit to quiet title, also known as a suit to remove cloud from title, is an equitable action to clarify ownership by removing invalid claims. <u>Ford v. Exxon Mobil Chemical Co.</u>, 235 S.W.3d 615, 618 (Tex. 2007) (per curiam). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." <u>Hahn v. Love</u>, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). "Any deed, contract, judgment or other instrument not void on its face that purports to convey any interest in or make any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner." <u>Wright v. Matthews</u>, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied). A plaintiff in a suit to quiet title "must prove and recover on the strength of his own title, not the weakness of his adversary's title." <u>Fricks v. Hancock</u>, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

A suit to quiet title under Texas law requires a plaintiff to prove: (1) a valid equitable interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) although facially valid, defendant's claim is invalid or unenforceable. Bryant v. Bank of America, N.A., No. 4:11-CV-448, 2012 WL 2681361, at *16 (E.D. Tex. June 6, 2012) (citing Sadler v. Duvall, 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991, pet. denied)). "The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." Gordon v. West Houston Trees, Ltd., 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

The Lender Defendants argue that "Felder's quiet-title claim is simply a repeated challenge to Lender Defendants' right to foreclose based on allegedly fraudulent assignments."[178] Although Felder asserts that his quiet-title "claim is based solely on the strength of his own superior Homestead title," all of his arguments pertain to whether the Deed of Trust is unenforceable due to either a defective securitization or a defective assignment.[179] The court has already concluded in § IV.C above that the Deed of Trust is enforceable. Accordingly, summary judgment is appropriate on Felder's quiet-title claims.

---

[178]Lender Defendants' Motion for Summary Judgment, Docket Entry No. 23, p. 26 ¶ 46.

[179]Plaintiff's First Amended Complaint, attached to Motion to Amend, Docket Entry No. 27-2, pp. 35-36 ¶¶ 128-33.

**G.   Felder's Claims for Slander of Title**

A slander of title action in Texas requires:  (1) the uttering
and publishing of disparaging words, (2) falsity, (3) malice,
(4) special damages, (5) possession of an estate or interest in the
property disparaged, and (6) the loss of a specific sale.  Williams
v. Jennings, 755 S.W.2d 874, 879 (Tex. App.—Houston 1988, writ
ref'd).   In arguing his claims for breach of contract and
interference with existing contract, Felder alleges that
"Defendants' actions constitute a slander of Plaintiff's title to
the subject property."[180]  Felder's claims for slander of title are
based entirely on his allegations that the Lender Defendants
foreclosed either without standing or in breach of the Deed of
Trust.[181]  The court has already determined that Felder has failed
to raise a genuine issue of material fact for trial with regard to
these issues.   Accordingly, summary judgment is appropriate on
Felder's claims for slander of title.[182]

---

[180]Id. at 28 ¶ 90, 29 ¶ 94; see also id. at 34 ¶ 121.

[181]In addition to the Lender Defendants' arguments addressed
above, the Lender Defendants assert that "Felder's claims have no
merit and his lawsuit should be dismissed because . . . his other
claims arising from the foreclosure and sale of the property lack
evidentiary proof or are barred by the economic loss rule and
statute of Frauds."   Lender Defendants' Motion for Summary
Judgment, Docket Entry No. 23, p. 9 ¶ 2, p. 30 ¶ 3.

[182]Because the court has concluded that no genuine issue of
material fact exists as to any of Felder's substantive causes of
action, no basis remains for the declaratory and injunctive relief
requested in Felder's First Amended Complaint.   See Morlock,
L.L.C., 2013 WL 5781240, at *10–*14; Morlock, L.L.C. v. JP Morgan
(continued...)

## V.   Conclusions and Order

For the reasons explained in § II above, the court concludes that BONY Mellon's Notice of Removal was timely filed, that West was improperly joined, and that the amount in controversy exceeds $75,000.  Accordingly, Plaintiff's Motion to Remand Cause of Action Under 28 U.S.C. § 1447(c) (Docket Entry No. 14) is **DENIED**.

For the reasons explained in § III above, Plaintiff's Motion for Leave to File First Amended Complaint (Docket Entry No. 27) is **GRANTED**.

For the reasons explained in § IV above, the court concludes that Felder has failed to raise a genuine issue of material fact for trial with regard to any of his alleged claims for relief.  The court therefore concludes that, even when drawing all reasonable inferences in favor of Felder, the Lender Defendants are entitled to judgment as a matter of law on all of Felder's claims. Accordingly, Lender Defendants' Motion for Summary Judgment (Docket Entry No. 23) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 20th day of December, 2013.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[182](...continued)
<u>Chase Bank, N.A.</u>, No. H-12-1448, 2012 WL 3187918, at *7 (S.D. Tex. Aug. 2, 2012), <u>aff'd</u>, No. 12-20623, 2013 WL 2422778 (5th Cir. June 4, 2013).  Defendants are therefore entitled to summary judgment on Felder's claims for declaratory and injunctive relief.